IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBIN R. SCROGGINS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-1444-L (BH) |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Brief in Support of Claim*, filed November 10, 2008; *Defendant's Motion for Summary Judgment*, filed December 10, 2008; and *Plaintiff's Reply to Defendant's Memorandum in Support of Motion for Summary Judgment*, filed December 11, 2008. Having reviewed the evidence of the parties in connection with the pleadings, the Court recommends that Plaintiff's motion for summary judgment be **GRANTED,** *Defendant's Motion for Summary Judgment* be **DENIED**, and the case be **REMANDED** to the Commissioner for further proceedings.

**I. BACKGROUND**[1]

**A.    Procedural History**

Robin R. Scroggins ("Plaintiff") seeks judicial review of a final decision by the

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

- 1 -

Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Plaintiff filed an application for disability benefits and supplemental security income on March 9, 2007. (Tr. at 93-103). Plaintiff claimed she had been disabled since February 12, 2005, due to bulging and herniated discs in her spine and problems with her right leg. (Tr. at 116). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 69, 82). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 86). A hearing, at which Plaintiff personally appeared and testified, was held on March 10, 2008. (Tr. at 8-31). On March 18, 2008, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 32-43). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 46-48). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 46). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on August 15, 2008.

**B.      Factual History**

    **1.      Age, Education, and Work Experience**

Plaintiff was born in 1960. (Tr. at 93). At the time of the hearing before the ALJ she was 47 years old. (Tr. at 244). She obtained her GED and completed a nine month program to become a registered medical assistant. (Tr. at 15, 122). Her past relevant work experience included work as a medical assistant and as an assistant manager in a retail store. (Tr. at 15-16). Plaintiff last worked in February of 2005. (Tr. at 17, 116).

### 2. Medical Evidence

The bulk of the lengthy medical appendix concerns Plaintiff's musculoskeletal impairments. Since the dispositive issue in this case is the ALJ's consideration of Plaintiff's mental impairments, only those records which are relevant to this issue are summarized.

On November 27, 2006, and January 9, 2007, Plaintiff visited Dr. Les Sandknop, D.O., for treatment of a rash on her arms and legs. (Tr. at 180-81). Although Dr. Sandknop did not treat Plaintiff for a mental condition (Tr. at 186), he refilled her monthly prescription medications of Xanax and Wellbutrin, two medications that are used to treat anxiety disorders and depression, respectively. (Tr. at 180-81; *see* Drug Information Portal, U.S. Nat'l Library of Medicine, *available at* http://www.druginfo.nlm.nih.gov (last visited Dec. 22, 2008)).

On January 25, 2007, Plaintiff was admitted to Lake Point Medical Center in Rowlett, Texas, for shortness of breath. (Tr. at 211). At her pulmonary consultation, Dr. William Leslie, M.D., noted that Plaintiff had a medical history of "significant anxiety." (Tr. at 215). Dr. Stephen Boswank, M.D., also noted a medical history of anxiety at Plaintiff's hematology and oncology consultation. (Tr. at 218). Among other diagnoses, the discharge summary issued on February 2, 2007, listed anxiety. (Tr. at 212).

Plaintiff visited Dr. Farooq Hassan, M.D. on May 2, 2007, for an evaluation as part of her disability application. (Tr. at 239-40). Although Plaintiff did not exhibit any anxiety during her physical examination, Dr. Hassan assessed her with anxiety. *Id*. He also assessed her with depression. *Id*.

### 3. Hearing Testimony

A hearing was held before the ALJ on March 10, 2008. (Tr. at 8-31). Plaintiff appeared

personally and was represented by an attorney.

Plaintiff testified that at the time of the hearing, she lived in a travel trailer located next to a barn on the land of some friends. (Tr. at 11-12). She worked as a registered medical assistant until February 12, 2005, when she was fired for not telling her employer when she would not be able to come in to work. (Tr. at 14). Prior to her work as a medical assistant, she managed the small appliance department of a retail store. (Tr. at 15-16).

Plaintiff testified that she missed a lot of work as a medical assistant due to pain in her back, leg, and right arm. (Tr. at 18). She also testified that she was physically unable to care for her two minor children and that they lived out-of-state with her ex-husband. (Tr. at 22-23). She then answered a series of questions about the extent of her physical limitations due to her spinal impairments. (*See* Tr. at 23-31).

C.  **ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on March 18, 2008. (Tr. at 32-43). The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009. (Tr. at 35; 37, ¶1). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, February 12, 2005. (Tr. at 37, ¶2). In addition, he found that Plaintiff had the severe impairments of "musculoskeletal disorders." (Tr. at 37, ¶3). The ALJ, however, concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment as of that date. (Tr. at 37, ¶4).

The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform light work and that she could stand, walk, or sit for up to six hours a day. (Tr. at 37, ¶5; 41).

The ALJ noted that "[t]here was no evidence of treatment for a mental impairment; she has no medically determinable mental impairment." (Tr. at 39). He further noted that "[t]here has been no record of treatment for a mental impairment, indicating the lack of disabling emotional pain." (Tr. at 40). The ALJ found that Plaintiff was unable to perform any of her past relevant work. (Tr. at 41, ¶6). Using the medical-vocational guidelines, he then determined that her RFC enabled her to perform a significant number of jobs in the national economy. (Tr. at 42, ¶10). Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from her alleged onset date through the date of his decision. (Tr. at 42, ¶11).

## II. ANALYSIS

### A. **Legal Standards**

#### 1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson*

*v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*.

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of

>           vocational factors.
>
>   4.      If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
>
>   5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.     Issues for Review**

   Plaintiff presents the following issues for review:

   (1)     Whether the ALJ failed to properly identify Plaintiff's severe impairments;

   (2)     Whether the ALJ erred in finding that Plaintiff does not have a medically determinable mental impairment; and

   (3)     Whether the ALJ's RFC is supported by substantial evidence.

(Pl. Mot. at 2).

## C.     Issue Two: Mental Impairment

The dispositive issue before the Court is whether the ALJ erred in finding that Plaintiff does not have a medically determinable mental impairment.[2] (Pl. Br. at 4-6).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id*. at 1101. Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id*. at 1104. To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id*. at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Eisenbach v. Apfel*, 2001 WL 1041806, at *6 (N.D. Tex. Aug. 29, 2001) (Boyle, Mag.). Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton*

---

[2] Although Plaintiff's first issue for review purportedly addresses her allegedly severe impairments, the brief in support of this issue only presents evidence pertaining to her physical impairments. (*See* Pl. Br. at 3-4). The second issue for review focuses on Plaintiff's alleged mental impairments and addresses the severity of these alleged impairments within the context of a step 2 finding. (*See* Pl. Br. at 4-6).

*v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the claim must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

In this case, the ALJ cited the Social Security regulation's definition for a severe impairment. (Tr. at 36) (citing 20 C.F.R. § 404.1520(c)). He did not explicitly reference *Stone* or a similar opinion applying the Fifth Circuit's standard. *See id*. He did, however, state that "[a]n impairment or combination of impairments is 'not severe' when medical or other evidence establish only a slight abnormality or combination of slight abnormalities *that would have no more than a minimal effect on an individual's ability to work*." *Id*. (emphasis added). Thus, according to the standard applied by the ALJ, a severe impairment could have, at most, a minimal effect on a claimant's ability to work. This is not the standard set forth in *Stone*, which holds that a severe impairment "would *not* be expected to interfere with the individual's ability to work." 752 F.2d at 1101 (emphasis added). Unlike the standard applied by the ALJ, *Stone* provides no allowance for a minimal interference on a claimant's ability to work. While the difference between the two statements appears slight, it is clear that the ALJ's construction is not an express statement of the *Stone* standard. This difference, coupled with the ALJ's failure to cite *Stone* or a similar opinion, leads the Court to conclude that the ALJ applied an incorrect standard of severity at step 2.

Additional evidence in the ALJ's narrative discussion supports this conclusion with regards to Plaintiff's alleged mental impairments. Particularly troubling is the ALJ's twice-stated categorical assertion that there was no evidence or record of treatment for a mental impairment. (Tr. at 39, 40). This statement is inaccurate since Plaintiff presented some evidence to meet her burden to show that she suffered from the mental impairments of anxiety and depression. For instance, Plaintiff has a history of regularly taking two psychotropic prescription medications, Xanax and

Wellbutrin. (Tr. at 180-81). Two doctors, Dr. Leslie and Dr. Boswank, noted a medical history of anxiety. (Tr. at 215, 218). Plaintiff also presented evidence of diagnosed depression and anxiety from Dr. Sandknop and Dr. Hassan. (Tr. at 212, 240). Although Plaintiff did not present laboratory findings of mental impairments or treatment records from a mental health professional, the statements from these four doctors cannot be dismissed out of hand since all are acceptable medical sources who can provide evidence to establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1513(a)(1). The relative weight accorded to the impairing effects of Plaintiff's depression and anxiety is something that should be addressed in the RFC assessment, not at the determination of a severe impairment. *See* 20 C.F.R. § 404.1520(a) (procedure for evaluating mental impairments); 20 C.F.R. § 404.1527(d) (weight accorded to medical opinions). Given the ALJ's complete disregard for this evidence from four medical sources, it is apparent that he applied an incorrect standard of severity at step 2 when he determined Plaintiff's severe mental impairments.

Defendant raises several arguments in support of the ALJ's assessment of Plaintiff's severe mental impairments. First, he contends that Plaintiff's subjective mental complaints must be corroborated by objective evidence. (Def. Br. at 6). As stated in the preceding paragraph, objective medical evidence from four medical sources gives credence to Plaintiff's allegations of anxiety and depression. Second, Defendant contends that Dr. Sandknop did not treat Plaintiff for a mental impairment. *Id*. While Dr. Sandknop is not a mental health care professional, he nevertheless renewed previous prescriptions for psychotropic medications, and these actions provide evidence in support of a medically determinable mental impairment. Third, Defendant contends that an absence of distress or visible signs of anxiety during the physical examinations by Dr. Leslie and Dr. Hassan somehow detracts from their diagnoses of anxiety. (*Id*. at 6-7). Although the impact of

an impairment on a claimant's ability to perform substantial gainful activity is a consideration at step 2, *Stone*, 752 F.2d at 1104, the ALJ's repeated statements that there was no evidence of a mental impairment shows that he did not consider the findings of Drs. Leslie or Hassan in his step 2 determination.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). However, the ALJ's failure to apply the *Stone* standard was a legal error, not a procedural error. The Fifth Circuit left the lower courts no discretion to determine whether such an error was harmless. Rather, the court mandated that "[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added). Because the Court finds that the ALJ applied an incorrect standard of severity at step 2 of the sequential disability determination process, remand is required. Since remand is required for an error at step 2 as it pertains to Plaintiff's mental impairments, the Court does not consider the remaining issues for review.

In addition, Plaintiff contends that the ALJ should have ordered a psychological consultation to further develop the record with regards to her alleged mental impairments. (Pl. Br. at 6). In this case, Plaintiff's statements and the medical evidence raise a suspicion about the existence of the non-exertional impairments of depression and anxiety. In such a situation, a consultative evaluation is necessary to fully and fairly develop the record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987); *Wren*, 925 F.2d at 128. Accordingly, on remand the ALJ shall order a psychological consultative examination to fully and fairly develop the facts relevant to Plaintiff's claim for

benefits. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir.1977)).

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's motion for summary judgment be **GRANTED**, *Defendant's Motion for Summary Judgment* be **DENIED**, and the decision of the Commissioner be **REVERSED** and the case be **REMANDED** for reconsideration.

On remand the ALJ must, as a part of his step 2 analysis, determine whether Plaintiff's depression and anxiety constitute severe impairments within the meaning set forth by the Fifth Circuit in *Stone v. Heckler*, 752 F.2d 1099 (1985). The ALJ must make this determination with the benefit of a psychological consultative examination. If the ALJ determines that these impairments are severe, the ALJ should proceed through the sequential steps of the disability determination process.

**SO RECOMMENDED**, on this 23rd day of December, 2008.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

                                                     IRMA CARRILLO RAMIREZ
                                                     UNITED STATES MAGISTRATE JUDGE